**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| KATHRYN GARNER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LOWE'S HOME CENTERS, LLC, a foreign limited liability company; and DOES 1-20, as yet unknown Washington entities,<br><br>Defendants. | No. 2:25-cv-01592-BJR<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT** |

Plaintiff Kathryn Garner ("Plaintiff"), individually and on behalf of all others similarly situated ("Class"), by and through her undersigned counsel, brings this action against Defendant Lowe's Home Centers, LLC ("Defendant") and alleges, upon personal knowledge as to Plaintiff's own actions and Plaintiff's counsel's investigation, and upon information and belief as to all other matters, as follows:

## I. NATURE OF THE CASE

1. This is a class action lawsuit to remedy Defendant's business practice of illegally restricting, restraining, and prohibiting low-wage workers from engaging in lawful professions, trades, and businesses and from accepting or transacting business with customers in violation of Washington's noncompetition law. *See* ch. 49.62 RCW.



**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

2. The Washington Legislature ("Legislature") enacted chapter 49.62 RCW, effective January 1, 2020, to facilitate workforce mobility and protect low-wage workers by prohibiting restrictive covenants that limit competition or hiring. *See* RCW 49.62.005.

3. In so doing, the Legislature found that "[w]orkforce mobility is important to economic growth and development" and that "[a]greements limiting competition or hiring may be contracts of adhesion that may be unreasonable." RCW 49.62.005(1)-(2).

4. The Legislature defined a "noncompetition covenant" to include "every written or oral covenant, agreement, or contract by which an employee or independent contractor is prohibited or restrained from engaging in a lawful profession, trade, or business of any kind." RCW 49.62.010(4).

5. Effective January 1, 2020, "an employer may not restrict, restrain, or prohibit an employee earning less than twice the applicable state minimum hourly wage from having an additional job, supplementing their income by working for another employer, working as an independent contractor, or being self-employed." RCW 49.62.070(1).

6. In prohibiting employers from restricting low-wage workers' ability to hold supplemental employment, the Legislature—as confirmed by the Washington Supreme Court—recognized that "many low wage workers must work multiple jobs" to earn a livable wage and "to provide for themselves and their families." *David v. Freedom Vans, LLC*, 4 Wn.3d 242, 244, 253 (2025). Recognizing this economic reality, the Legislature specifically intended to "broadly protect" these economically vulnerable workers "by allowing them to secure supplemental employment within their industry." *Id.* at 249 n.3 (citing ENGROSSED SUBSTITUTE H.B. 1450, 66th Leg., Reg. Sess. (Wash. 2019)).

7. If an employer seeks greater control over their employees by restricting the worker's freedom to hold an additional job, "they have a simple solution—pay the worker more than twice the applicable state minimum hourly wage." *Id.* at 260 (Lewis, J., concurring).

8. To better protect Washington workers from unreasonable and illegal restrictive covenants, the Legislature mandated that chapter 49.62 RCW "be construed liberally for the



**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

accomplishment of its purposes." RCW 49.62.110.

9. In 2024, the Legislature clarified the liberal construction mandate of chapter 49.62 RCW in response to courts "misinterpret[ing]" the statutory provisions and "fail[ing] to embrace that the statute should be liberally construed." S.B. REP. ON ENROLLED SUBSTITUTE S.B. 5935, 68th Leg., Reg. Sess. (Wash. Feb. 6, 2024) ("ESSB 5935 Bill Report"). The Legislature emphasized the importance of this liberal mandate by repeating its express requirement that courts "liberally constru[e]" the "provisions in [chapter 49.62 RCW] facilitating workforce mobility and protecting employees and independent contractors" and "narrowly constru[e]" its exceptions. RCW 49.62.005(3); SSB 5935, 68th Leg., Reg. Sess. (Wash. 2024) (effective June 6, 2024); *see also David*, 4 Wn.3d at 245, 247, 248-50 (applying liberal construction to RCW 49.62.070).

10. In the 2024 amendments, the Legislature also clarified that the prohibition on noncompetition covenants includes "agreement[s] that directly or indirectly prohibit[] the acceptance or transaction of business with a customer." RCW 49.62.010(4). The Legislature intended to clarify that an employer cannot prevent a former employee from accepting business from customers. ESSB 5935 Bill Report at 4. This amendment was, again, in direct response to "courts . . . misconstru[ing] nonacceptance of business clauses as nonsolicitation covenants." *Id.*

11. Supporters of the 2024 amendments highlighted the harm of noncompete clauses generally, noting that these restrictions "interfere with a person's ability to seek or accept a new job," "suppress wages[,] and allow[] large companies to control workers." ESSB 5935 Bill Report at 4.

12. In violation of chapter 49.62 RCW generally, and RCW 49.62.070 specifically, Defendant unlawfully restricted, restrained, or prohibited Plaintiff and over 40 Class members from having an additional job, supplementing their income by working for another employer, working as an independent contractor, or being self-employed, while paying them less than twice the applicable state minimum hourly wage.

13. Plaintiff and Class members seek damages pursuant to RCW 49.62.080.



**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

## II. JURISDICTION AND VENUE

14. Based on Defendant's representations in its Notice of Removal, ECF Nos. 1-2, jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1332(a) and (d).

15. Venue is proper in this Court under 28 U.S.C. § 1441(a) because the action was removed by Defendant to the United States District Court for the Western District of Washington, which embraces King County, the place where the action was pending.

## III. PARTIES

16. Plaintiff Kathryn Garner resides in Clark County, Washington and was employed by Defendant in Washington.

17. Defendant Lowe's Home Centers, LLC is a foreign limited liability company that regularly transacts business in King County, Washington and has offices for the transaction of business throughout King County, Washington, including at 2700 Rainier Avenue South, Seattle, Washington 98144; 12525 Aurora Avenue South, Seattle, Washington 981323; and 1625 11th Avenue Northwest, Issaquah, Washington 98024.

18. Plaintiff is currently unaware of the true names and capacities of the defendants sued herein under fictitious names Does 1-20, inclusive, and therefore sues such defendants by such fictitious names. Plaintiff will seek leave to amend this complaint to allege the true names and capacities of the fictitiously named defendants when their true names and capacities have been ascertained. Plaintiff is informed and believes, and thereon alleges, each of the fictitiously named defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiff and the Class.

## IV. STATEMENT OF FACTS

**Lowe's Business Operations**

19. Lowe's is a publicly traded American retailer with approximately 300,000 employees working at its over 1,700 home improvement stores across the county, approximately 35 of which are located in Washington state. *See Our Business*, LOWE'S, https://corporate.lowes.com/who-we-are/our-business (last visited Sept. 10, 2025).



**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

20. According to Gracie Ridley, Lowe's Senior Director Income & Payroll Tax, between July 30, 2022 and August 19, 2025, Lowe's "employs and has employed approximately 15,886 individuals who worked as non-exempt employees in the State of Washington and who earned less than $28.98 per hour in 2022, less than $31.48 per hour in 2023, less than $32.56 per hour in 2024, and less than 33.32 per hour in 2025." Decl. of Gracie Ridley ISO Def.'s Notice of Removal ¶ 7, ECF No. 4.

21. Lowe's requires that all employees, irrespective of pay, location, or job title, abide by the covenants set forth in its "Code of Business Conduct and Ethics," which it provides to all employees at the outset of their employment and periodically during employment as updated versions are published.

22. A current version of the "Code of Business Conduct and Ethics" is available on the Lowe's corporate website. *See* https://corporate.lowes.com/investors/corporate-governance/governance-documents.

23. A true and correct copy of this outside employment covenant is attached as Exhibit A.

24. The Lowe's "Code of Business Conduct and Ethics" includes an outside employment covenant stating, in pertinent part: "You must not have a material financial interest in any vendor, potential vendor, or competitor . . . You are prohibited from competing with Lowe's." Ex. A at 9.

25. Upon information and belief, Lowe's maintains additional written covenants, oral covenants, agreements, and/or contracts restricting its employees' ability to engage in lawful professions, trades, or businesses, as well as their ability to accept or transact business with customers.

26. The outside employment covenant in the "Code of Business Conduct and Ethics" is an unlawful and unreasonable noncompetition covenant as it restricts, restrains, and/or prohibits all employees, including Plaintiff and Class members, from having an additional job, supplementing their income by working for another employer, working as an independent



**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

contractor, or being self-employed.

27. The outside employment covenant in the "Code of Business Conduct and Ethics" reflects a standard business practice designed to prevent Plaintiff and Class members, i.e., low-wage workers, from having second jobs.

**Class members**

28. Class members are current and former Washington employees of Lowe's.

29. During the Class Period, Class members earned less than twice the applicable state minimum hourly wage as set forth below:

| Year | Washington Min. Wage | RCW 49.62.070(1) Threshold |
|---|---|---|
| 2022 | $14.49 per hour | $28.98 per hour |
| 2023 | $15.74 per hour | $31.48 per hour |
| 2024 | $16.28 per hour | $32.56 per hour |
| 2025 | $16.66 per hour | $33.32 per hour |

*History of Washington State's Minimum Wage*, Wash. State Dep't of Lab. & Indus., https://lni.wa.gov/workers-rights/wages/minimum-wage/history-of-washington-statesminimum-wage (last visited Sept. 10, 2025); RCW 49.62.070(1).

30. Despite earning less than twice the applicable state minimum hourly wage from their employer Lowe's, Class members were subject to, and were required to abide by, the outside employment covenant in the "Code of Business Conduct and Ethics."

31. Upon information and belief, Class members were subject to additional written covenants, oral covenants, agreements, and/or contracts prohibiting, restricting, and restraining them from having an additional job, supplementing their income by working for another employer, working as an independent contractor, or being self-employed despite earning less than twice the applicable state minimum hourly wage from Lowe's.

32. By restricting, restraining, and prohibiting Class members from having an additional job, supplementing their income by working for another employer, working as an



**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

independent contractor, or being self-employed while paying them less than twice the applicable state minimum hourly wage, Lowe's violated Class members' statutory rights under chapter 49.62 RCW.

33. Class members suffered economic and non-economic harm and damages, including but not limited to lost income opportunities, reduced bargaining power, unemployment risk, and diminished career mobility as a result of being restricted, restrained, and/or prohibited from having an additional job by Lowe's.

34. Class members also suffered economic harm and damages in the form of underpaid wages as they should have been paid at least twice the applicable Washington state minimum hourly wage while being restricted, restrained, and prohibited from having an additional job, supplementing their income by working for another employer, working as an independent contractor, or being self-employed.

35. Class members each seek the greater of their actual damages or statutory damages of $5,000, plus their reasonable attorneys' fees and costs.

**Plaintiff Kathryn Garner**

36. Plaintiff worked for Lowe's in Washington state from approximately November 9, 2005, to approximately September 2, 2023.

37. During the Class Period, Plaintiff earned less than twice the applicable state minimum hourly wage, i.e., less than $28.98 per hour in 2022, less than $31.48 per hour in 2023, and less than $33.32 per hour in 2024.

38. Upon hire, Plaintiff was provided a copy of the Lowe's "Code of Business Conduct and Ethics."

39. Plaintiff was told by Lowe's management that she was required to abide by the "Code of Business Conduct and Ethics" as a condition of employment.

40. As Lowe's published updated versions of its "Code of Business Conduct and Ethics," Plaintiff was informed by management that she was required to continue abiding by it as a condition of continued employment.



**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

41. Plaintiff was prohibited from holding supplemental employment with any Lowe's competitors, vendors, or potential vendors as a result of being bound to Lowe's "Code of Business Conduct and Ethics."

42. But for Lowe's binding Plaintiff to the "Code of Business Conduct and Ethics," Plaintiff would have explored opportunities to supplement her income by moonlighting at other home improvement retail establishments or at Lowe's vendors.

43. Plaintiff suffered economic and non-economic harm and damages, including but not limited to lost income opportunities, reduced bargaining power, unemployment risk, and diminished career mobility as a result of being restricted, restrained, and/or prohibited from having an additional job by Lowe's.

44. Plaintiff also suffered economic harm and damages in the form of underpaid wages as she should have been paid at least twice the applicable Washington state minimum hourly wage while being restricted, restrained, and prohibited from having an additional job, supplementing their income by working for another employer, working as an independent contractor, or being self-employed.

45. Plaintiff seeks the greater of her actual damages or statutory damages of $5,000, plus her reasonable attorneys' fees and costs.

## V. CLASS ACTION ALLEGATIONS

46. Class Definition. Under Civil Rule 23(a) and (b)(3), Plaintiff brings this case as a class action against Defendant on behalf of the Class defined as follows:

> All current and former employees of Lowe's Home Centers, LLC who worked in Washington and earned less than twice the applicable state minimum hourly wage from July 30, 2022, through the date of certification of the Class.

47. Excluded from the Class are Defendant and its officers and directors.

48. Numerosity. There are at least 15,886 Washington employees who earned less than twice the applicable state minimum hourly wage, and were restricted, restrained, or prohibited from having an additional job. Joinder of all such individuals is impracticable. Further, the



**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

disposition of all claims of the Class in a single action will provide substantial benefits and efficiency to all parties and to the Court.

49. Commonality. Because Class members were subject to identical or virtually identical policies and practices as Plaintiff, this is a straightforward matter of determining whether Defendant's actions violate Washington law and, if so, assessing statutory damages.

50. Typicality. Plaintiff's claims are typical of the claims of the Class. Plaintiff and Class members all worked for Defendant in Washington, earned less than twice the applicable state minimum hourly wage, and were restricted, restrained, or prohibited from having an additional job.

51. Adequacy. Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained competent and capable attorneys with substantial experience in complex class action litigation. Plaintiff and Plaintiff's counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so. Neither Plaintiff nor Plaintiff's counsel have interests that are contrary to or that conflict with those of the Class.

52. Predominance. Defendant has engaged in a common course of conduct of restricting, restraining, or prohibiting low-wage workers from having an additional job in violation of RCW 49.62.070. The common issues arising from Defendant's unlawful conduct affect Plaintiff and Class members and predominate over individual issues. Adjudication of these common issues in a single action has the important and desirable advantage of judicial economy.

53. Superiority. Plaintiff and the Class have suffered, and will continue to suffer, harm and damages as a result of Defendant's unlawful conduct. However, absent a class action, most Class members would find the cost of litigating their claims prohibitive, especially when that cost is balanced against each individual's respective potential award. Class treatment is superior to multiple individual lawsuits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for claimants with smaller cases and those with few resources, and deters illegal activities. There will be no significant difficulty in the management of this case as a class action. The members of the Class and the



**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

agreements they were subject to are readily identifiable through Defendants' records.

## VI. CAUSES OF ACTION

**<u>FIRST CAUSE OF ACTION</u>**
**VIOLATION OF RCW 49.62.070**
***Claim of Relief for Plaintiff and the Class***

54. Plaintiff incorporates by reference all foregoing factual allegations and realleges them as though fully set forth herein.

55. Defendant is an "employer" as defined by RCW 49.62.010(2).

56. Plaintiff and Class members are "employees" as defined by RCW 49.62.010(2).

57. Defendant employed Plaintiff and Class members in Washington.

58. Plaintiff and Class members earned less than twice the applicable state minimum wage from Defendant.

59. Defendant restricted, restrained, or prohibited Plaintiff and Class members from having an additional job, supplementing their income by working for another employer, working as an independent contractor, or being self-employed.

60. Defendant's actions and omissions violate RCW 49.62.070.

61. As a result of Defendant's actions and omissions, Plaintiff and Class members have experienced economic and non-economic harm.

62. Plaintiff and Class members were aggrieved by Defendant's violation of RCW 49.62.070.

63. Plaintiff and Class members each seek the greater of their actual damages or $5,000 in statutory damages, plus their costs and reasonable attorneys' fees pursuant to RCW 49.62.080.

## VII. REQUEST FOR RELIEF

64. Plaintiff, individually and on behalf of members of the Class, requests that the Court enter judgment against Defendant as follows:

a. An order certifying that this action be maintained as a class action and appointing Plaintiff as Class Representative and Plaintiff's counsel as Class



**EMERY | REDDY, PLLC**
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106 • Fax: (206) 441-9711

Counsel;

b. The greater of actual damages or statutory damages of $5,000 to Plaintiff and each Class member pursuant to RCW 49.62.080;

c. Attorneys' fees and costs pursuant to RCW 49.62.080;

d. Pre- and post-judgment interest;

e. Preliminary and permanent injunctive relief prohibiting, restraining, and enjoining Defendant from engaging in the conduct complained of herein;

f. Declaratory relief to the effect that Defendant's anti-moonlighting policies violate Washington law;

g. Leave to amend this complaint to conform to the evidence; and

h. Any additional or further relief the Court deems equitable, appropriate, or just.

DATED September 17, 2025.

EMERY | REDDY, PLLC

By: /s/ Timothy W. Emery_________

Timothy W. Emery, WSBA No. 34078
Patrick B. Reddy, WSBA No. 34092
Paul Cipriani, WSBA No. 59991
Hannah M. Hamley, WSBA No. 59020
600 Stewart Street, Suite 1100
Seattle, WA 98101
Phone: (206) 442-9106
Fax: (206) 441-9711
Email: emeryt@emeryreddy.com
Email: reddyp@emeryreddy.com
Email: paul@emeryreddy.com
Email: hannah@emeryreddy.com

*Attorneys for Plaintiff Kathryn Garner*

# EXHIBIT A






# LOWE'S®

# Code of Business Conduct and Ethics





# A Message from Marvin R. Ellison, Chairman, President, and CEO

**Our company's reputation is a priceless asset, earned by our associates through years of hard work and dedication to serving our customers and communities well and to always doing what we believe to be right.**




Our business goals are important to our success relative to the competition, but how you compete is just as important as whether or not you win. And we want to be sure, even when the competition is intense, that we always conduct ourselves ethically and with irreproachable integrity.

This Code of Business Conduct and Ethics makes clear our expectations for the way every Lowe's associate should conduct themselves. It is our commitment to comply with the regulations and laws under which we operate, and to always act with integrity and professionalism. This Code also helps to ensure we treat our customers, vendors, communities, and fellow associates with dignity, respect, and honesty.

Please read the Code carefully and conduct yourself in accordance with its principles in your day-to-day work. You should use the Code to find answers to your questions as well as to find where to go if you need to raise any concerns.

**Thank you for your commitment to Lowe's, and for all your hard work. Our reputation was built and is now maintained by the good decisions that you make for us and those we serve every day.**

# Table of Contents


**A Message from Marvin R. Ellison, Chairman, President, and CEO ................................ 2**

**Introduction ........................................................... 4**

Our Mission and Who We Are ..................................4

Who is Covered by Our Code? ..................................5

Your Responsibility as a Lowe's Associate .............5

How to Use this Code .................................................6

Asking Questions and Reporting Concerns ..........6

What Happens When Concerns are Raised? .......6

Commitment to Non-Retaliation .............................6

**Serving Each Other as Associates ........................... 7**

Respectful and Inclusive Work Environment .........7

Health and Safety .........................................................8

**Serving Our Business............................................... 9**

Conflicts of Interest .....................................................9

Protection and Proper Use of Company Assets ......................................................11

Physical Assets ....................................................11

Technology Assets ...............................................11

Intellectual Property ...........................................11

Confidential Information ................................. 12

Information Protection ............................................. 13

Data Security ..................................................... 13

Data Privacy....................................................... 13

Fair Dealing and Fair Competition......................... 14

Fair Dealing ........................................................ 14

Fair Competition ................................................. 14

Competitively Sensitive Information ............ 15

Bribery and Corruption ........................................... 16

Anti-Money Laundering ......................................... 16

**Serving Our Shareholders ..................................... 17**

Maintaining Accurate Business Records ............. 17

Internal Controls ....................................................... 17

Insider Trading.......................................................... 18

Public Company Reporting..................................... 19

Communicating with the Public............................. 19

**Serving Our Communities .................................... 20**

Environment and Sustainability ............................ 20

Vendor Code of Conduct ........................................ 20

**Conclusion ........................................................... 21**

Monitoring and Reporting ....................................... 21

No Interference with Other Rights ........................ 21

Amendment, Modification, and Waiver ............... 21

**Contact Information ............................................. 22**

# Introduction

## Our Mission and Who We Are

### Our Mission is simple:

Together, deliver the right home improvement products, with the best service and value, across every channel and community we serve.

**Our core behaviors:** *Inspire our culture to help us lead by example and bring out the best in each other.*

- Focus on Customers
- Deliver Results
- Take Action
- Show Courage
- Continue Learning

### Our Code of Business Conduct & Ethics (the "Code")

This Code outlines Lowe's commitment to conduct business in compliance with the law. It is also the framework for how we serve each other, our customers, our shareholders, and our communities with integrity and professionalism.

*Together, our core behaviors and the Code are the foundation to achieve our mission with integrity and pride.*



## Who is Covered by Our Code?

This Code applies to all associates of Lowe's Companies, Inc. and its affiliates and subsidiaries ("Lowe's" or the "Company") around the world. It also applies to members of the Lowe's Board of Directors when acting in their role as board members or in any other role related to Lowe's.

## Your Responsibility as a Lowe's Associate

As Lowe's associates, we must strive to act ethically and with integrity to earn the trust and respect of our customers and fellow associates. It is our responsibility to read and follow the Code and help ensure others do so as well.

Lowe's values its reputation for complying with laws, regulations, and its own policies and procedures. When acting on behalf of the Company, you must comply with laws, regulations, and Lowe's policies and procedures at all times. Keep in mind that this Code and some of Lowe's policies and procedures may set higher expectations than what is required by applicable laws. You should seek guidance from Corporate Compliance and Ethics to resolve any uncertainty about complying with laws, regulations, and the Code.

Failure to comply with the Code may lead to discipline, up to and including termination. If your actions violate the law, you could be subject to civil penalties, fines, and/or criminal prosecution. If you become aware of violations or potential violations of this Code, you must report them to Corporate Compliance and Ethics.



## How to Use this Code

This Code sets forth Lowe's standards in areas of key legal and ethical importance. You must follow this Code in your day-to-day business conduct. While the Code seeks to address common scenarios you may face, it is not exhaustive.

## Asking Questions and Reporting Concerns

You may encounter situations that require interpretation of the Code. When in doubt about the best course of action, you should seek guidance from your supervisor or Corporate Compliance and Ethics. You must report conduct that is, or could be, in violation of the Code to Corporate Compliance and Ethics or to the EthicsPoint hotline.

You may submit concerns openly or anonymously. See Contact Information for details.

## What Happens When Concerns Are Raised?

Lowe's will promptly evaluate and respond to all potential violations of this Code. Depending upon the nature and circumstance of the alleged violation, the response could include conducting an internal investigation, engaging an outside party to investigate, and/or disclosure to regulatory authorities. Lowe's expects you and third- party business partners to cooperate fully with any investigation. If a report of non-compliance is substantiated, Lowe's will take prompt and appropriate action to address any issues.

### WHAT IF:

**Q: What happens when I report an issue to the EthicsPoint hotline?**

A: EthicsPoint is managed by a third party and your call or internet submission will be answered by an independent operator. Operators can answer calls in English, Spanish, Mandarin Chinese, and other languages if needed. The operator will ask you for details and will respect any decision to remain anonymous. Your report will then be shared with the relevant group(s) within Lowe's (Corporate Compliance and Ethics, Human Resources, Asset Protection, or others) for discreet review and follow up.

## Commitment to Non-Retaliation

Lowe's recognizes that it takes courage to speak up. Lowe's is committed to creating an environment where individuals can report suspected violations, participate in investigations, and engage in other legally protected activities without fear of retribution or retaliation. Lowe's will not allow retaliation for reporting, in good faith, suspected violations of this Code. Individuals who retaliate against others will be subject to disciplinary action, up to and including termination.

# Serving Each Other as Associates

## Respectful and Inclusive Work Environment

Lowe's is committed to fostering a culture of diversity and inclusion. Lowe's believes that all associates should be treated fairly. Not only is it the right thing to do, but a respectful and supportive environment also leads to greater associate engagement and a successful business. Lowe's prohibits discrimination or harassment based on an individual's race, color, religious creed, sex, gender, age, ancestry, national origin, mental or physical disability or medical condition, sexual orientation, gender identity or expression, marital status, military or veteran status, genetic information, or any other legally protected status.

Everyone plays a part in creating a workplace culture of respect and inclusion. You are expected to conduct yourself in such a manner as to support a working environment free of discrimination and harassment. Also, if you experience or see harassing or intimidating behavior, do not let it continue — you should immediately report your concerns directly to your people leader, any member of your leadership, Human Resources.



### WHAT IF:

**Q:** My coworker often imitates my accent and tells me that I should learn to speak "proper" English. He then says he is only joking, and I should not take offense. I do not find his imitations funny, and I feel they are offensive. Can I do anything to stop this?

**A: Yes, you should seek help by reporting your concern directly to your people leader, any member of your leadership, or Human Resources.**

### Continue Learning:

Equal Employment Opportunity Policy

Equal Employment Opportunity Policy (SSC-B Associates)

No Harassment Policy

Prevention of Sexual Harassment (POSH) Policy (SSC-B Associates)

Open Door Program Policy

Open Door Program Policy (SSC-B Associates)

## Health and Safety

Lowe's is committed to protecting the health and safety of its associates, customers, vendor partners, and communities. Running our business in compliance with health and safety laws is crucial to providing a safe place to shop and work.

Safety is everyone's responsibility. You are responsible for doing your part in maintaining a healthy and safe environment by:

- Complying with applicable health and safety policies and practices, including:
  - Reporting to work and performing your duties free from the influence of alcohol or impairing drugs;
  - Maintaining a violence-free workplace by not directing or tolerating acts or threats of violence; and
  - Operating vehicles, machinery, or powered equipment safely, with proper training, and appropriate personal protective equipment.
- Taking proper immediate action to correct an unsafe work condition; and
- Promptly reporting any unsafe work condition or conduct.

### WHAT IF:

**Q:** I noticed that equipment at my location needs maintenance. I am concerned that the lack of maintenance can lead to an accident. I reported this to my supervisor, and he said not to worry about it at this time because it will be an unnecessary cost for the quarter. What else should I do?

**A: You should immediately escalate your concerns to your organization's senior leadership or Asset Protection & Safety. Cost savings do not come before workplace safety.**

### Continue Learning:

U.S. Safety and Health Policy



# Serving Our Business

## Conflicts of Interest

Conflicts of interest exist when you or your immediate family members act in a way that would make it difficult to perform your work objectively and effectively when judged from an outside perspective. The appearance of a conflict of interest can be as damaging to Lowe's and your reputation as an actual conflict. You must comply with Lowe's Global Conflicts of Interest Policy, which requires you to avoid actual as well as perceived conflicts between your personal interests (including the interests of your immediate family members) and Lowe's interests.

The Global Conflicts of Interest Policy addresses the following categories. For more information, review the Policy.

- **Gifts, Benefits, and Entertainment:** You may be able to accept certain gifts, benefits or entertainment from vendors or potential vendors, but you must follow the Policy's disclosure and approval process for items that exceed $100 USD in value. For disclosure and approval, you should use a Gift Receipt Authorization Form. Any gift, benefit, or entertainment must be reasonable in value, infrequent, and linked to a legitimate business purpose. Certain types of gifts, benefits, and entertainment are never acceptable, including cash, cash equivalents, or anything offered during an audit, inspection, bidding, proposal, or line review process.
- **Financial Interests and Investments:** You must not have a material financial interest in any vendor, potential vendor, or competitor. You must also disclose to Corporate Compliance and Ethics if an immediate family member has a material financial interest in any vendor, potential vendor, or competitor.
- **Transactions Involving Immediate Family:** You must not be involved in transactions or business dealings where an immediate family member works in certain roles on behalf of a vendor or potential vendor.
- **Personal Relationships with Vendor Partners:** You must disclose to Corporate Compliance and Ethics personal or romantic relationships with vendors or potential vendors (or their personnel) if they interact or overlap with your responsibilities for Lowe's.
- **Competing with Lowe's:** You are prohibited from competing with Lowe's.
- **Corporate Opportunities:** You must not take for yourself business opportunities that properly belong to Lowe's.
- **Personal Gain:** You must not use Lowe's property, information, or your position with Lowe's for non-employment related personal gain or for the personal gain of your immediate family members.
- **External Opportunities:** You must disclose and seek approval for certain outside roles, positions, board memberships, and business opportunities. These include potential roles with Lowe's vendors, potential vendors, competitors, customers, partners, and beneficiaries, or roles which relate to, or overlap with, the work you do for Lowe's.
- **Public Office:** You must inform Corporate Compliance and Ethics if you hold or seek to hold a public office that has the capacity to influence Lowe's or its competitors' business.

*Immediate family members include your spouse, domestic partner, parent, stepparent, child, stepchild, sibling, mother and father-in-law, son and daughter-in-law, brother and sister-in-law, or anyone (other than domestic employee) who shares your home.*

*A vendor is any individual or organization that does business with Lowe's, including merchandise vendors, non-merchandise vendors, suppliers, industry groups, trade associations, consultants and consulting firms, or other service providers.*

**If you are unsure of whether a situation creates a conflict of interest, think about the following questions:**

- **Does it affect my ability to make impartial decisions?**
- **Does it affect my ability to put Lowe's first or to treat all vendor partners equally?**
- **Could it be viewed negatively from an outside perspective?**

**Unless you can confidently answer "no" to each of these questions, you should contact Corporate Compliance and Ethics.**




## WHAT IF:

**Q:** A vendor is offering me gifts and entertainment. Is this okay to accept?

**A: Possibly. Accepting gifts and entertainment from current or potential vendors may be appropriate but can depend on several factors including type, value, frequency, business purpose, and whether or not the vendor is involved in an audit or bidding process. Please consult with Corporate Compliance and Ethics before accepting.**

## Continue Learning:

Global Conflicts of Interest Policy

## Protection and Proper Use of Company Assets

Lowe's assets include, but are not limited to, Lowe's physical property, technology, and intellectual property. You must protect Lowe's assets and ensure that they are only used for legitimate business purposes. Inappropriate use, theft, fraud, loss, carelessness, and waste could impact Lowe's reputation and profitability.

### Physical Assets

You are responsible for the proper use and safeguard of physical assets, which include merchandise, buildings, fixtures, furniture, tools, equipment, communications equipment, vehicles, credit cards, and cash.

### Technology Assets

You are expected to maintain the security and integrity of technology assets you receive to do your job. Technology assets include computers, hardware, phones, mobile devices, network systems, access to systems, software, and other electronic systems and media.

### WHAT IF:

**Q:** I work in one of Lowe's stores. As I am preparing to go home, I notice my co-worker taking home a power tool that was returned by a customer as damaged. What should I do?

**A: You must immediately report this conduct to your store manager or Asset Protection. Even if the returned merchandise is damaged or to be disposed of, it is still Lowe's property and needs to be properly processed in accordance with vendor's return policy. Stealing from Lowe's can negatively affect the Company by reducing its profits and compromising its ability to provide customers the value they expect.**

### Intellectual Property

Lowe's intellectual property is one of our most valuable assets and must be used properly and protected against infringement by others. Lowe's intellectual property includes its logo, trademarks, service marks, inventions, patents, copyrights, trade secrets, domain names, and other similar proprietary information. You should never allow anyone to use our trademarks or other intellectual property without proper authorization by the Legal Department.

Inventions, discoveries, ideas, concepts, written material, and trade secrets which are created by you as part of your job are Lowe's property to the extent permitted by law. You must cooperate in documenting Lowe's ownership of any such intellectual property.

### WHAT IF:

**Q:** One of my key vendors wants to use Lowe's logo in their marketing materials. Can I give it to them to use?

**A: No. Lowe's does not allow the use of Lowe's name or logo for our vendors' marketing purposes, unless exceptional circumstances apply. Contact Lowe's Legal Department for further guidance.**

**Q:** I want to tell a company about the secret Lowe's technology used to create our Kobalt tools to see if they have the capability to manufacture the tools on Lowe's behalf. Can I do that?

**A: Yes, but only if the manufacturer has first signed a confidentiality agreement obligating the manufacturer to keep the Lowe's technology confidential and you are confident that the manufacturer will honor its confidentiality obligation. Contact Lowe's Legal Department for assistance.**

### Confidential Information

Proper handling of confidential information is crucial to Lowe's success. Confidential information is any non-public information that relates to Lowe's business. This can include customer, budget, financial, credit, marketing, pricing, supply cost, or strategy information. Confidential information also includes personal information about customers, associates, or others. You must maintain the security of confidential information entrusted to you by Lowe's and its vendors, service providers, customers, and others. These limitations on the use of confidential information do not prohibit associates from engaging in activity or speech otherwise protected by the National Labor Relations Act, including but not limited to discussing terms and conditions of employment.



## WHAT IF:

**Q:** A friend of mine works for a company in the home improvement industry. He asked me for pricing information related to one of Lowe's vendors, which is also one of his key competitors. He explained that the information would give him a competitive edge but promised that the information would have no direct impact on Lowe's business. Can I share this information?

**A: No, and you must decline his request. A vendor's pricing information is confidential and must not be disclosed. Disclosing this information could harm our vendor and damage Lowe's reputation.**

**Q:** I think it is faster to share information with my team using a third-party messaging application like WhatsApp. Can I share sales updates or other strategic information with my team this way?

**A: No. Third-party messaging applications are not a secure environment for sending or receiving confidential information and should not be used for business communications.**

## Information Protection

### Data Security

It is critical to protect associate, supplier, customer, and Company data from unauthorized disclosure and use. You are expected to maintain the security and integrity of this data. You should immediately report any suspected unauthorized disclosure and use to the Information Security Group.

### Data Privacy

Our business handles personal information from our customers, employees, and business partners. Examples of personal information include, but are not limited to, name, address, phone number, email address, date of birth, credit card numbers, social security numbers, or device ID. To respect the trust that people place in us, you must collect, use, and share the personal information responsibly and comply with the law.

## WHAT IF:

**Q:** I received a call from someone claiming to be from the Lowe's Information Technology team who requested my system username and password. They said it was an emergency, so I gave them the information, but now I am concerned this was a mistake. What should I do?

**A: You must immediately report all suspected data incidents, including suspected hacking or unintentional disclosure, to the Information Security Group for investigation.**

**Q:** I need to share personal information with a vendor for a project that I am working on. What should I do?

**A: You should submit a privacy and security assessment request for an evaluation to make sure the personal information will receive adequate protection. For additional information, visit the Corporate Privacy Resource Center.**




## Continue Learning:

Acceptable Use Policy
Lowe's US Privacy Statement
Associate Privacy Statement
Associate Privacy Statement (SSC-B Associates)

## Fair Dealing and Fair Competition

### Fair Dealing

Integrity and honesty are critical to Lowe's business. You are required to interact with customers, vendors, and competitors fairly, honestly, ethically, and lawfully. You should never seek to obtain any improper business advantage for the Company by manipulating, misrepresenting, or concealing facts, misusing privileged or confidential information, or otherwise acting illegally, unfairly, dishonestly, or unethically.

### WHAT IF:

**Q:** My supervisor told me to misrepresent key information to negotiate a better deal with a vendor. Should I go ahead and follow directions?

**A: No. The suggestion that you should manipulate information to gain a business advantage is dishonest and unacceptable. You must report this to Corporate Compliance and Ethics.**

### Fair Competition

Lowe's is committed to complying with all applicable fair competition and antitrust laws, which require that companies act independently of their competitors. Therefore, you must never enter into an agreement (expressed or implied) with any competitor or potential competitor to:

- Fix or set prices on products and services;
- Divide or allocate markets, customers, or territories;
- Manipulate a bidding process;
- Refuse to deal with a customer or supplier for improper reasons;
- Boycott another company; and/or
- Set associate salary, benefits, or other terms of compensation, or refrain from competing for each other's associates, unless doing so is reasonably necessary to a separate legitimate, business collaboration.



### Competitively Sensitive Information

You must not discuss Lowe's non-public competitively sensitive information with any third party unless the information relates directly to our business dealings with that third party. Also, you must not discuss the non-public, competitively sensitive information of any third party with any other party.

Competitively sensitive information includes all information relating to prices, costs, rebates, promotional payments or programs, volumes sold or purchased, terms or conditions of sale, how products or vendors are selected, pricing, retail, or other business strategies, market focus, future or potential business plans, labor rates, and any other similar competitively sensitive information. This does not prevent you from disclosing competitively sensitive information specifically required or allowed by applicable laws.

## WHAT IF:

**Q:** I recently met with associates from Lowe's competitors at a trade association meeting. During the meeting, some attendees began discussing their companies' pricing formulas. I thought this was an inappropriate topic, so I spoke up and suggested that we stop discussing it. The discussion ended and the topic was not brought up again. Did I do the right thing?

**A: Yes, you did the right thing by publicly objecting to and stopping an inappropriate discussion. If it continues, you should announce you are leaving and not take part in any further discussions. You should then inform Corporate Compliance and Ethics about what took place.**

## Continue Learning:

Global Antitrust Policy



## Bribery and Corruption

Bribery and corruption undermine fair competition, distort market integrity, and impede economic development. Lowe's has zero tolerance for corruption of any kind, and this applies everywhere Lowe's does business. You must neither engage in, nor sanction, any type of bribery and corruption whether public or commercial. You must comply with all anti-corruption laws, including the U.S. Foreign Corrupt Practices Act ("FCPA").

You must never authorize, offer, or pay anything of value — either directly or indirectly — to anyone, including a government official, to obtain an unfair business advantage.

### WHAT IF:

**Q:** A foreign customs official offered me expedited clearance and minimal scrutiny for all of Lowe's shipments if we donate to his place of worship. Can we make the donation?

**A: No. Providing anything of value (which can include charitable donations) to the foreign official to gain a business advantage could be in violation of the FCPA and other anti-corruption laws. You must immediately bring this to the attention of Corporate Compliance and Ethics.**

### Continue Learning:

Anti-Corruption Compliance Policy

## Anti-Money Laundering

Money laundering is the practice of using legitimate transactions to disguise the origin of funds obtained illegally. It can be connected to many types of criminal activity including fraud, theft, terrorism, and the sale of illegal drugs. You must be vigilant to help prevent money laundering and any associated risks. Red flags may include:

- A large transaction (more than $10,000 USD) where a customer offers to pay in cash;
- A large transaction a customer asks to split into several smaller purchases;
- Large (whether in quantity or amount) gift card purchases; and/or
- Any other payment activity that appears suspicious or inappropriate.

### WHAT IF:

**Q:** A customer is trying to buy $5,000 USD in gift cards. Is this a problem?

**A: Possibly; it depends on the circumstances. This activity could be suspicious and should be reported to your people leader and Corporate Compliance and Ethics.**

### Continue Learning:

Anti-Money Laundering Policy

# Serving Our Shareholders

## Maintaining Accurate Business Records

Lowe's requires that all books, records, accounts, and other financial information submitted for the purposes of external financial reporting be complete, reasonably detailed, accurately reflect transactions and events, and conform to applicable legal and accounting requirements.

### WHAT IF:

**Q:** I was asked by Lowe's outside auditor to provide estimated liabilities for sales returns within my department for the quarter. I know that the financial projections for my department this quarter are not good. To improve the bottom line, I am thinking about telling the auditor that reserves for sales returns are lower than their actual amount. Can I do this?

**A: No. Intentional manipulation, willful omission and/or misleading an auditor about financial data violates Lowe's policies and the law. You will be subject to discipline, including termination, and possible civil and criminal penalties for willfully manipulating financial reporting data.**

**Q:** I am on the sourcing team and my colleague says she could make some adjustments to the purchase orders so that my bad months could look better. Would this be a problem?

**A: Yes. Deliberate and incorrect recording of financial reporting data, such as improper recognition of product cost (e.g., purchase orders), violates Lowe's policies and the law. You should decline the opportunity and inform Corporate Compliance and Ethics about the offer.**

## Internal Controls

Lowe's maintains a system of internal controls to provide reasonable assurances about the effectiveness and reliability of the Company's financial reporting. This system includes, but is not limited to, Lowe's policies and procedures for maintaining accurate and complete accounting records, authorizing transactions, and safeguarding assets. You must refer any questions about what constitutes an internal control process over financial reporting or any transactions which could impact financial reporting to the Chief Accounting Officer, the VP of Internal Audit, or a member of the Lowe's Disclosure Committee. Additionally, you are required to report any questionable conduct, including conduct relating to accounting, internal accounting controls, or audit matters to Corporate Compliance and Ethics.





Compl. Ex. A p.17

## Insider Trading

Insider trading is prohibited by the law and Lowe's policy. You must not misuse material non-public ("inside") information, whether the information concerns Lowe's or any other company. Any information that could reasonably be expected to affect the price of a security is material. Information is non-public until it is broadly disseminated to the general public and the investing public has had time to absorb it fully. For examples of material non-public information, see Lowe's Insider Trading Policy.

Misuse of inside information falls into two categories:

- **Trading:** Trading involves buying or selling shares of any company's stock while in possession of inside information about that company. This applies equally to information about Lowe's or any other company.
- **Tipping:** Tipping involves sharing inside information with any other person who then trades while aware of the information. You should not share inside information with anyone who does not have a legitimate business need to know it.

### WHAT IF:

**Q:** My friend in Business Development let me know that Lowe's plans to significantly expand its business in a foreign country, and that this expansion should increase Lowe's profits. Since I am not involved with the planned expansion, can I purchase shares of Lowe's stock?

**A: No. The information about the planned expansion is likely to be considered inside information. You may neither buy nor sell shares of Lowe's stock or of any other public company substantially related to the transaction if the information is material and has not been made available to the public.**

**Q:** During an internal meeting prior to the release of the sales and earnings results, I learned that Lowe's results for the current quarter will be much better than expected. I later receive a call from my father-in-law asking whether he should hold or sell his shares of Lowe's. I tell him that it is a good time to hold, and an even better time to buy. Is this wrong?

**A: Yes. Communicating this inside information is prohibited "tipping."**

### Continue Learning:

Insider Trading Policy

## Public Company Reporting and Communications

Lowe's is committed to communicating with the investment community on an accurate, timely and non-exclusionary basis. It is important that Lowe's speaks with one consistent voice. Therefore, only authorized individuals may make public statements on Lowe's behalf. If you are asked to discuss Lowe's business on behalf of the Company with the media, investors, or analysts, please refer them to a designated spokesperson. For more information, review the Regulation FD Disclosure Policy.

Our auditors, our lawyers, and other parties may ask you for assistance to ensure that the information conveyed to the U.S. Securities Exchange Commission (the "SEC") and in other public communications is complete and accurate. You are required to provide prompt and accurate answers to any such inquiries. You must not mislead anyone engaged in an audit or preparation of Lowe's financial statements. If you become aware of a possible material misstatement or omission in Lowe's SEC reports or other public statements, you must promptly report these to Corporate Compliance and Ethics.

### Continue Learning:

Regulation FD Disclosure Policy



# Serving Our Communities

## Environment and Sustainability

Lowe's is committed to protecting the planet, conserving natural resources, and operating efficiently and ethically. We do this by working with responsible vendors, making improvements to our operations, and following applicable environmental laws and regulations. We also help customers live more sustainably through products, services, and education. As an associate, you must always comply with all relevant laws and regulations, including those related to the environment.




## Vendor Code of Conduct

Lowe's is serious about doing business ethically and responsibly. This commitment extends to those companies that choose to be Lowe's partners. Whether a company is offering Lowe's products to sell to the public or offering services to help Lowe's achieve its mission, the expectation is always that it does so legally, ethically, and responsibly. Lowe's Vendor Code of Conduct sets out the ways in which vendors are required to conduct themselves as a condition of doing business with Lowe's. Failure to comply with the Vendor Code of Conduct can negatively impact a vendor's business with Lowe's up to and including termination of any commercial relationship.

### WHAT IF:

**Q:** I am trying to onboard a new vendor and they are objecting to the Vendor Code of Conduct. Is this a problem?

**A: Yes. The Vendor Code of Conduct sets out reasonable minimum standards for doing business legally and with integrity. If a vendor objects to these standards, you should ask yourself whether they can be the type of partner that we need to help protect Lowe's brand and reputation. You should also seek guidance from Corporate Compliance and Ethics.**

### Continue Learning:

Vendor Code of Conduct

# Conclusion

## Monitoring and Reporting

The Chief Compliance Officer and authorized delegates monitor compliance with the Code and have the authority to interpret and resolve all questions arising under it. If you are uncertain about compliance with this Code or laws and regulations, seek guidance from Corporate Compliance and Ethics.

Designated associates are required to affirm annually, to the best of their knowledge, that they have complied with the Code, have no knowledge of any violation or suspected violation of the Code not previously reported, and have not been asked to engage in any activity that could be considered a violation of the Code.

The Company's auditors are also required to diligently and promptly report any matter that appears to be in violation of the Code.

## No Interference with Other Rights

Nothing in this Code or any Lowe's policy (i) restricts you from reporting possible violations of law or regulation to any government agency, (ii) prevents you from participating, assisting, or testifying in any proceeding or investigation by any such agency, or (iii) prevents you from making other disclosures that are protected and/or permitted under law or regulation. You are not required to obtain prior authorization from Lowe's or to notify Lowe's regarding any such report, participation, or disclosure.

Neither this Code nor any Lowe's policy will be interpreted or applied in a way that would interfere with associates' rights to self-organize, form, join or assist labor organizations, bargain collectively through representatives of their own choosing, and/or engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

## Amendment, Modification, and Waiver

This Code may be amended or modified by the Lowe's Board of Directors upon recommendation of the Nominating and Governance Committee. Waivers of this Code for Lowe's executive officers or Board of Directors members may only be granted by the Board of Directors or its Nominating and Governance Committee and will be subject to applicable laws and regulations regarding disclosures to shareholders.

# Contact Information

compliance@lowes.com

1-800-309-5859 for the U.S. and Canada

www.ethicspoint.com

Brazil: 0800-8911667

Colombia: 01800-9-155860

China (Northern): 10-800-712-1239

China (Southern): 10-800-120-1239

Hong Kong: 800-964214

India: 000-800-100-1071 or 000-800-001-6112

Indonesia: 001-803-011-3570 or 007-803-011-0160

Malaysia: 1-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

Mexico: 001-8008407907 or 001-866-737-6850

Taiwan: 00801-13-7956

Thailand: 001-800-12-0665204

Vietnam: 120-11067

OTHER International: 503-619-1883

LOWE'S®