The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KATHRYN GARNER,

Plaintiff,

v.

LOWE'S HOME CENTERS LLC,

Defendant.

NO. 25-cv-1592-BJR

**ORDER REMANDING CASE**

## I. INTRODUCTION

This putative class action was filed by Plaintiff, Kathryn Garner, against Defendant, Lowe's Home Centers LLC, alleging violations of Washington State's noncompetition law, RCW 49.62. Currently pending before the Court are the parties' motions for summary judgment, ECF Nos. 24, 27. Having reviewed the materials[1] and the relevant legal authorities, the Court found it necessary to *sua sponte* consider the issue of Article III standing in this matter. *See D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) ("[W]hether or not the parties raise the issue, federal courts are required *sua sponte* to examine jurisdictional issues such as standing." (citation

[1] Including Lowe's motion, ECF No.24; Garner's Cross-Motion and response in opposition, ECF No. 27; Lowe's reply and response in opposition, ECF No. 33; and Garner's reply, ECF No. 37; together with attached declarations and exhibits.

omitted)). Upon review of the record and developing case law in this District, the Court concludes that Lowe's has not met its burden to show that Garner has Article III standing. Consequently, the Court will remand this case back to King County Superior Court and strike the pending motions as moot. The reasoning for the Court's decision follows.

## II. BACKGROUND

Kathryn Garner was employed by Lowe's in Vancouver, Washington from November 2005 until September 2023. Garner Dep. 22-23, 67, Kelly Decl. Ex. A, ECF No. 26-1; Garner Decl. ¶ 4, ECF No. 29. When she was hired in 2005, she signed an employment contract, that included an employee handbook and the Code of Business Conduct and Ethics (the "Code"), with which she agreed to comply. Garner Dep. 29, 53, 58, 60; Garner Decl. ¶ 6; Reddy Decl. Ex. A. The handbook and the Code were periodically updated, and although Garner admits she did not read all the updates or Lowe's emails, she attests that she understood Lowe's policy prohibiting employees from working for a Lowe's competitor. Garner Dep. 53-54, 58, 60-63; Garner Decl. ¶¶ 7-9. Garner was aware of co-workers who held second jobs, and she states that although no one ever told her she could not pursue a second job, her understanding of the Lowe's policy was: "You couldn't have a second job if it competed with Lowe's." Garner Dep. 53-54. She declares that she considered obtaining a second job to supplement her income, but she did not pursue any potential opportunities because she "wasn't sure whether Lowe's would" allow it. Garner Decl. ¶¶ 12-16. Garner alleges that she earned less than twice the Washington State minimum wage while she was employed by Lowe's. Am. Compl. ¶ 37, ECF No. 10.

Garner filed a class action complaint against Lowe's in King County Superior Court, and Lowe's timely removed the case to this Court, based on federal jurisdiction under the Class Action

Fairness Act ("CAFA") and diversity jurisdiction, 28 U.S.C. §§ 1332, 1441, and 1446. Removal Notice 1, ECF No. 1. Garner contends that the Lowe's Code, which she attached to her complaint, prohibited her from holding supplemental employment with any Lowe's competitors, vendors, or potential vendors, which she asserts is an unlawful non-competition covenant under RCW § 49.62.070. Am. Compl. ¶¶ 36-42, 54-63.

The case proceeded and the parties filed the pending cross-motions for summary judgment. However, while reviewing the evidence provided by the parties, and considering recent case law in this District,[2] the Court determined that it had a duty to examine Garner's Article III standing in this matter, which directly impacts whether this Court has subject matter jurisdiction to rule on the merits of the cross-motions for summary judgment. *See Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016) ("In an ordinary removal case, '[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.' No motion, timely or otherwise, is necessary: ultimate responsibility to ensure jurisdiction lies with the district court." (quoting 28 U.S.C. § 1447(c))).

## III. LEGAL STANDARD

Federal question jurisdiction exists over "civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. "Under Article III, the Federal Judiciary is vested with the 'Power' to resolve not questions and issues but 'Cases' or 'Controversies.'" *Ariz.*

---

[2] *See, e.g.*, Order, ECF No. 57, in *Hager v Metro One Loss Prevention Services Group, Inc. et al.*, Case No. 3:25-cv-05164-JHC (concluding that defendants had not met their burden to show that Plaintiff had standing in s removed WNCA case); Order, ECF No. 32, in *Holt v CVS Health Corporation*, Case No. 2:25-cv-02369-RAJ (ordering defendant to show cause why the WNCA case should not be remanded for lack of subject matter jurisdiction); Order Remanding Case, ECF No. 44, in *Chung v Garda CL Northwest, Inc. et al.*, Case No. 2:26-cv-00147-LK (remanding to state court after defendant failed to show cause that plaintiff had standing in the removed WNCA case); Order, ECF No. 31, in *Minson v. Ulta Salon Cosmetics & Fragrance Inc. et al.*, Case No. 2:25-cv-01675-JHC (same).

*Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 132 (2011). "Among other things, that limitation requires a plaintiff to have standing." *Fed. Election Comm'n v. Cruz*, 596 U.S. 289, 295–96 (2022). In the context of a class action, the class representatives must have standing. *See NEI Contracting & Eng'g, Inc. v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974))); *see also Lierboe v. State Farm Mut. Auto. Ins. Co.*, 350 F.3d 1018, 1022 (9th Cir. 2003) ("[S]tanding is the threshold issue in any suit. If the individual plaintiff lacks standing, the court need never reach the class action issue."). Whether a plaintiff has Article III standing to proceed with the lawsuit implicates the Court's subject matter jurisdiction. *See Warth v. Seldin*, 422 U.S. 490, 498 (1975) (stating that standing is jurisdictional). If at any time before final judgment it appears that the federal district court lacks subject matter jurisdiction, "the case shall be remanded" to state court. 28 U.S.C. § 1447(c); *see also Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996).

"For there to be a case or controversy under Article III, the plaintiff must have a personal stake in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). The elements to establish standing are: (1) that plaintiff "suffered an injury in fact that is concrete, particularized, and actual or imminent;" (2) "that the injury was likely caused by the defendant;" and (3) "that the injury would likely be redressed by judicial relief." *Id.* (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 560–61. And "each element must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561.

An injury-in-fact requires a showing that the plaintiff suffered "an invasion of a legally protected interest." *Id.* at 560 (citations omitted). And the injury is concrete if it "actually exist[s]," meaning that it is "'real' and not 'abstract.'" *Spokeo, Inc. v. Robins (Spokeo I)*, 578 U.S. 330, 340 (2016), *as revised* (May 24, 2016) (citations omitted). Importantly, a plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III." *Id.* at 341. "[T]he Supreme Court made clear that a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Robins v. Spokeo, Inc. (Spokeo II)*, 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo I*, 578 U.S. at 341).

## IV. DISCUSSION

In its motion for summary judgment, Lowe's argues that Garner cannot prove that she is a "person aggrieved by a noncompetition covenant." Lowe's MSJ 12-13, 16, ECF No. 20 (quoting RCW 49.62.080). And Lowe's contends that any claim based on the employee handbook that Garner received in 2005 is not actionable because the Washington Noncompetition Covenants Act ("WNCA") expressly prohibits causes of action regarding noncompetition covenants that were signed prior to January 1, 2020, if the noncompetition covenant is not being enforced or explicitly leveraged. *Id.* at 17. Garner asserts that she is entitled to judgment as a matter of law on all elements of her WNCA claim because Lowe's violated RCW 49.62.070 by including a blanket non-competition covenant in the Code. Garner XSJ 1-2, ECF No. 27.

The parties' arguments draw the Court's attention to whether there is evidence of a concrete injury in the context of a statutory violation. The Court will begin with an overview of the statute and the Lowe's Code, which allegedly violates the statute.

### A. The WNCA and Lowe's Code

The WNCA is the state statute governing noncompetition covenants and workforce mobility. In January 2020, Washington State established regulations on post-employment non-compete agreements and introduced anti-moonlighting protections for lower-wage workers (defined as those who earn less than twice the applicable state minimum hourly wage) to safeguard an employee's right to seek outside work during their employment. *See generally* RCW 49.62. The moonlighting protections are an active, independent pillar of the law, specifically protecting vulnerable, lower-wage workers from blanket restrictions on their earning potential. RCW 49.62.070. Basically, the legislature has recognized that some workers must have multiple jobs to earn a living wage, and a worker's original employer should not have complete control over whether they accept an additional job with another employer.

Employers who pay their employees less than twice the minimum wage cannot prohibit them from working second jobs, subject to limited exceptions. RCW 49.62.070. Specifically, under RCW § 49.62.070(1),

> an employer may not restrict, restrain, or prohibit an employee earning less than twice the applicable state minimum hourly wage from having an additional job, supplementing their income by working for another employer, working as an independent contractor, or being self-employed.

"Employers may impose restrictions consistent with the common law duty of loyalty." *David v. Freedom Vans LLC*, 4 Wn. 3d 242, 244 (2025) (citing RCW 49.62.070(2)(b), .005(3)). And an employer can restrict a low-wage worker's second job if they can prove the outside work raises legitimate safety concerns for the public or coworkers, or directly interferes with reasonable and normal scheduling expectations. RCW 49.62.070(2)(a). In *Freedom Vans*, the Washington Supreme Court clarified that these exceptions must be interpreted narrowly, and prohibitions must

be reasonable under the circumstances of each case. 4 Wn. 3d at 245, 254; *accord* RCW 49.62.005 ("The provisions in this chapter facilitating workforce mobility and protecting employees and independent contractors need to be liberally construed and exceptions narrowly construed."). Essentially, "noncompete agreements are presumptively invalid for low wage workers." *Freedom Vans*, 4 Wn. 3d at 250.

If employers violate any of the WNCA provisions, they may be subject to paying damages or statutory penalties plus attorney fees. RCW 49.62.080. In addition to the ability of the attorney general to pursue relief, a "person aggrieved by a violation of this chapter may bring a cause of action." *Id.* at (1). "If a court or arbitrator determines that a noncompetition covenant violates [the WNCA], the violator must pay the aggrieved person the greater of his or her actual damages or a statutory penalty of five thousand dollars, plus reasonable attorneys' fees, expenses, and costs incurred in the proceeding." *Id.* at (2).

Garner attests that Lowe's "Code of Business Conduct and Ethics" (the "Code") was provided to her when she was hired, and it was maintained on the "MyLowesLife" portal. Garner Decl. ¶¶ 6-10; Garner Dep. 29, 58-62. The version of the Code attached to her Complaint includes the following statements:

> This Code applies to all associates of Lowe's Companies, Inc. and its affiliates and subsidiaries ("Lowe's" or the "Company") around the world.
>
> . . . .
>
> Failure to comply with the Code may lead to discipline, up to and including termination.
>
> . . . .
>
> You are prohibited from competing with Lowe's.

> . . . .
>
> You must disclose and seek approval for certain outside roles, positions, board memberships, and business opportunities. These include potential roles with Lowe's vendors, potential vendors, competitors, customers, partners, and beneficiaries, or roles which relate to, or overlap with, the work you do for Lowe's.

Am. Compl. Ex. A.[3]

The Lowe's policy makes no distinction between executives and lower-wage workers. The language stating that "You are prohibited from competing with Lowe's" is the same type of phrasing discussed in *Freedom Vans*, in which the company required its employees to sign a noncompete agreement restricting them from "directly or indirectly engag[ing] in any business that competes" with the company during their employment. *See* 4 Wn. 3d at 246 (describing the agreement as including a restriction on "'becoming an employee of any third party that is engaged' in a 'competitive business.'"). Additionally, the Code requires all employees to "disclose and seek approval" before taking outside roles.

The Washington Supreme Court held that "barring employees from providing *any* kind of assistance to competitors exceeds a narrow construction of the duty of loyalty, contrary to the legislature's intent to protect low wage employees." *Freedom Vans*, 4 Wn. 3d at 253. Here, the Code uniformly applied to all Lowe's associates, which included lower-wage earners protected by the WNCA. Under the WNCA, a company cannot arbitrarily bar low-wage employees from working for a competitor in their off-hours. RCW 49.62.070; *Freedom Vans*, 4 Wn. 3d at 253. The Lowe's policy plainly imposes a blanket restriction, with no exemption for lower-wage workers,

[3] The Court observes that these statements appear in all the versions provided in the exhibits, and no party disputes that the Code, including these statements, was in effect during the relevant period of Garner's employment after the enactment of the WNCA in 2020.

and it leaves no room for lower-wage workers to moonlight without seeking permission. As such, the policy's plain language presumptively violates the WNCA.

**B. Remand**

As previously stated, the party that invokes federal jurisdiction bears the burden to establish it, *Lujan*, 504 U.S. at 561, which in this case is Lowe's, who removed the case to this Court. However, Lowe's argues that Garner was not a "person aggrieved" within the meaning of RCW § 49.62 because she did not suffer an actual injury caused by the Code and merely speculates that she would have applied for a job but for the Code. Lowe's MSJ 16-17; Lowe's Opp'n 8-9. Garner responds that she is not required to make any additional showing of harm because the Code infringes on her legal rights. Garner Reply 21. Lowes provided Garner's deposition transcripts, which include admissions that Lowe's maintains are fatal to any causation argument. Lowe's Reply 10 (citing *Stewart v. Chevon Chemical Co.*, 111 Wn. 2d 609, 610-11, 614 (1988)). And Lowe's asserts that the Code is not a "noncompetition covenant" as defined in the WNCA. Lowe's MSJ 13. The parties' assertions undermine a finding of a concrete non-speculative injury sufficient to establish Article III standing in federal court. Further, other courts in this District have determined that allegations regarding this statutory violation without identification of any other harm, are insufficient to establish standing in federal court.

Therefore, the Court concludes that there is insufficient evidence to show that Garner has Article III standing to pursue relief under the WNCA in federal court. Hence, "[r]emand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the *federal* courts have no power to adjudicate the matter. State courts are not bound by the constraints of Article III." *Polo*, 833 F.3d at 1196.

Accordingly, because the Court has determined that it lacks subject matter jurisdiction, this case must be remanded pursuant to 28 U.S.C. § 1447(c). The parties' motions will be struck as moot.

## V. CONCLUSION

For the foregoing reasons,

1. This case is remanded to King County Superior Court;
2. Defendant Lowe's Home Centers, LLC's Motion for Summary Judgment, ECF No. 24, is struck as moot;
3. Plaintiff's Cross Motion for Summary Judgment, ECF No. 27, is struck as moot.

DATED this 20th day of October 2026.

Barbara Jacobs Rothstein
United States District Judge